IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| KASSAN KHALID MORGAN, ) | |
| TDCJ No. 1306656, ) | |
| Plaintiff, ) | |
| ) | Civil No. 7:12-CV-034-O |
| v. ) | |
| ) | |
| DANNA RICHARDS, *et al.*, ) | |
| Defendants. ) | |

## FINDINGS OF FACT AND RECOMMENDATION

By Order of Reference (Docket No. 41) Plaintiff's Motion for Preliminary Injunction was referred to the undersigned for hearing, if necessary, findings of fact and recommendation. An evidentiary hearing of this matter was conducted before the undersigned on September 14, 2012. Plaintiff appeared in person. Defendants appeared by and through counsel Craig Jacobs and Matt Greer with the Office of the Attorney General of Texas. Following the hearing Defendants and Plaintiff filed their respective briefs. Having reviewed Plaintiff's pleadings and the affidavits submitted in support of his motion and after hearing the evidence, and considering the arguments and briefs by the parties, I make the following findings and recommendation.

FINDINGS AND RECOMMENDATION

Factual Background

Plaintiff Kassan Khalid Morgan (Morgan) at all relevant times was an inmate at the Allred Unit of the Texas Department of Corrections in Iowa Park, Texas. Prior to filing this lawsuit, Morgan was the plaintiff in an excessive force civil rights case before this court in CA 7:09-CV-167 ("former case"). While his former case was awaiting resolution, Morgan filed this lawsuit claiming that he was being retaliated against by members of the Allred prison staff for

1

having filed and for pursuing the former case against seven other officers.  By his pleadings he claimed at least four incidents of retaliatory actions taken against him while his former case was pending: (1) an incident involving the turning off of the water supply to his cell; (2) a "use of force" incident; (3) an incident of denial of food; and, (4) a later incident of retaliatory disciplinary action.  Morgan claims that the perpetrating officers involved in these four incidents were retaliating against his having filed and pursued the former case.  Unrelated to his retaliation claims, he additionally alleged a denial of access to the courts arising from an alleged pattern of denial of writing materials such as writing paper, envelopes, stamps and pens for communicating with the court.  By his motion Morgan seeks a preliminary injunction against the Defendants enjoining them from "any further retaliative acts."[1]

## Preliminary Injunction Standards

A preliminary injunction "is an extraordinary and drastic remedy which should not be granted unless the movant has clearly carried the burden of persuasion concerning the existence and application of what we have recognized as the four prerequisites to such relief.  They are (1) a substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the party or parties opposed, and (4) a showing that the injunction, if issued, would not be adverse to the public interest."[2]  The decision to grant a preliminary injunction is to be treated as

---

[1]  Docket No. 28, at p.1.

[2]  *Texas v. Seatrain Internat'l*, 518 F. 2d 175, 179 (5th Cir. 1975); *Carson v. Kelly*, 2011 U. S. Dist. LEXIS 84290 (N.D. Tex. 2011, MJ Toliver).

2

the exception rather than the rule.[3] Injunctive relief operates only prospectively, not retrospectively.

Under the PLRA, the court must find that the prospective relief is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right,"[4] before granting injunctive relief. Accordingly, "before granting prospective injunctive relief, the trial court must make the findings mandated by the PLRA [and must] give 'substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.'" Because a preliminary injunction is an extraordinary and drastic remedy, one is not granted unless the movant clearly carries the onerous burden of persuasion as to all elements.[5]

## The Testimony

At the hearing the court heard testimony from Morgan on the four alleged incidents of retaliation and from another inmate witness. One of Morgan's inmate witnesses declined to testify. The court also heard testimony from two of the defendants, Satterfield and Haynes.

## Findings

As to the four retaliation incidents I find that Morgan's testimony was not credible. His perception of and his description of the events neither make chronological sense nor justify any inference of any retaliatory motivation on behalf of the officers involved. The respective

---

[3]   *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

[4]   18 U.S.C. § 3626(a)(1).

[5]   *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989); *United States v. Jefferson County*, 720 F.2d 1511, 1519 (5th Cir. 1983).

3

officers' own testimony of the events in which they were involved was clear, unambiguous and credible. They denied any knowledge of the former case or the allegations therein or of the named defendants until immediately before the evidentiary hearing when they were informed of the former case by their attorneys.

      Morgan claims that Officers Richards and Satterfield conspired to turn off the water to his cell and to his toilet in retaliation against Morgan because of the former case against other fellow officers. Morgan claims that Satterfield initiated the course of events by shining a light into his cell and making retaliatory threats. This, Morgan claims, justified his initiating a flooding of his cell to gain the attention of "rank," a superior officer. I find that the incident precipitating Morgan's flooding of his cell and discharging feces therein was initiated by Morgan himself after he refused to obey a proper direct order from Officer Satterfield to cease masturbating. Satterfield told him she would write him up a case because of his refusal. From there Morgan escalated the confrontation by flooding his cell. Then when told to cease and desist from overflowing his sink, Morgan persisted and introduced his feces into the mix. This conduct was designed by Morgan to flood the lower cells so he would gain some attention by "rank." The exhibits introduced by the defendants during Satterfield's testimony corroborate her version of the events of March 1, 2012.

      The alleged "use of force" incident which occurred later in the day of the flooding incident was precipitated by Morgan's own recalcitrant conduct, wholly unrelated to the former suit. The officer's conduct during the use of force incident may be examined later by the district court on the merits. Other than the fact that this use of force incident occurred <u>while</u> the former case was pending, there was no other correlation between the two. I find that the conduct of

Officers Satterfield and Richie (as well as any of the other officers responding to the course of events on March 1, 2012) was not precipitated by any retaliatory motive. Any relief to which Morgan may be entitled as a result of this use of force incident, as to the merits of which I express no opinion, would be retrospective in the form of damages (nominal, compensatory or punitive) but not prospective in the form of an injunction.  I find that the subsequent "denials of food" alleged by Morgan occurred only because Morgan refused to follow the mandated procedure for the delivery of food through the food slot in the Administrative Segregation (Ad Seg) area of the prison. In order to safely deliver the food trays into the cells in Ad Seg the inmate is directed to stand to the back of the cell, clear of the food slot, so that the delivering officer may slide the tray into the slot without being close to the inmate.  I find that Morgan failed to follow the mandated feeding procedure.  Therefore, I find that the denial of food to him on the occasions involved was not due to any retaliative motive on behalf of the officers.

Morgan also complained and testified about another incident that occurred on August 15, 2012, a little over a month after he had filed his motion for preliminary injunction.  He claims that by aggressively kicking his cell door he attempted to make contact with "rank" to air a complaint, but that Officers Franco and Harris wrongfully and with a retaliatory motive wrote him up on a disciplinary case that resulted in his loss of certain privileges.  He claims that the event shows the prison staff's retaliatory motives in their actions in relation to him.  As an eye witness to the event of August 7, Officer Satterfield testified that the entire incident was precipitated by Morgan's own kicking of the cell door and that Officers Franco and Harris acted appropriately and without any retaliatory motive or statements. I find that Satterfield's testimony on this matter was credible and that Morgan's was not. I find no support for Morgan's claim of retaliation.

The only evidence that any of the conduct of the defendant officers during any of the incidents toward Morgan was retaliatory is Morgan's own written allegations and his own hearing testimony that the officers made retaliatory statements at or about the time the incidents occurred. The officers expressly denied making any of the alleged retaliatory statements. I find that the officers' testimony was credible. I find that Morgan's testimony regarding the statements is not credible.

Allred prison has established certain rules and regulations for the provision of writing materials (paper, envelopes, stamps, and pens) to indigent prisoners such as Morgan. Under those rules an indigent prisoner may receive without cost both "personal" writing materials and "legal" writing materials; however, there are certain restrictions on the numbers and frequency for obtaining each. The rules are disseminated to the inmates.

The procedure for the mailing of correspondence by indigent inmates was similarly regulated. The mailing rules stipulated that the inmate must deposit the correspondence in the proper large dedicated envelope, placed in the food slot, moved by prison staff to the mail room, then delivered to the library where it would by processed for delivery to the US Postal Service. Under the rules "legal" mail (not subject to opening and examination) was to be placed in the "legal" envelope while personal mail (subject to opening and examination) was to be placed in the "personal" envelope.

Morgan was familiar with those supply and mailing rules.

The prison librarians, such as Officer Haynes, were charged with enforcing those rules. Under those rules, the inmate was entitled to five pages of paper and five envelopes for "legal" use. Once those materials were used up for "legal" use, the inmate could requisition new legal materials. The library staff kept a written record of the requests for and of the usage of the materials for both "personal" and "legal" use. If an inmate established a need for additional

6

"legal" materials the additional materials would be provided. During her testimony, Officer Haynes described these rules in detail.

Morgan's complaint concerning the "denial of access to the courts" arose out of his claim that Haynes had delayed Morgan's outgoing mailings and had delayed or refused the filling of his requests for "legal" writing materials. Morgan could not identify any single outgoing mailing that was delayed by Haynes or other library staff. As to his claim of delayed or unfilled requests for "legal" materials, Haynes produced the written records of Morgan's requests, the library responses, and the actual usage data. Haynes also showed that on the occasion Morgan complained about in his testimony, Morgan had not used up the "legal" materials he had formerly been issued, so under the rules he was not entitled to more, without additional justification. Having reviewed the written records in the light of Haynes testimony (which I find to be credible), I find that Morgan has wholly failed to establish that Haynes or any of the library staff purposely or wrongfully delayed or refused any furnishing of written correspondence materials. I find that the correspondence material rules are neither unfair nor overly restrictive and that they have reasonable relationship to penology needs and functions and were fairly enforced within the Constitutional limits.

Finally, I find that it is unlikely that Morgan will prevail on any of his retaliation claims or on his claim of denial of access to the courts.

## Recommendation

By reason of the foregoing I recommend to the district court that Morgan's Motion for Preliminary Injunction be denied.

It is so ORDERED, this 4th day of October, 2012.

_Robert K. Roach_
Robert K. Roach
UNITED STATES MAGISTRATE JUDGE

<u>Standard Instruction to Litigants</u>

      A copy of this report containing findings and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).